United States Court of Appeals
Fifth Circuit

**F I L E D**

June 30, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 03-10956
_____

LOUIS C. ROBERSON,

Plaintiff-Appellant,

versus

ALLTEL INFORMATION SERVICES,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas

Before BARKSDALE, EMILIO M. GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Appellant, Louis Roberson, filed suit against Appellee, Alltel Information Services ("Alltel"),

claiming race, sex, and age discrimination and retaliation under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 623(a). The district court granted summary judgment for Alltel on each of

Roberson's claims. Roberson timely appealed.

Roberson, an African-American male, was born December 31, 1952. Roberson worked at

Alltel for approximately twenty years during which time he rose to the level of Systems Engineer-Applications ("SEA"). In Spring 2000, Roberson was reclassified from SEA to Mainframe Programmer II ("Programmer II"). Later that year, Alltel placed Roberson on an unfunded assignment,[1] working under project leader Skip Steed. While working on the project, Roberson and Steed had numerous conflicts such that Roberson eventually requested that Alltel remove him from the assignment. Roberson then filed his first discrimination complaint claiming that Alltel reclassified him to Programmer II in retaliation for addressing issues regarding minority workers with Alltel management. Roberson's complaint also objected to Alltel's "good-ole boy" network, referring specifically to his problems with Steed. After investigating Roberson's allegations, Alltel concluded there was no discrimination, but granted Roberson's request for removal from the project.

As part of his first discrimination complaint, Roberson indicated a desire to switch from programming to business analysis. Alltel granted Roberson's request and allowed him a ninety-day trial period in a Business Analyst II position. Alltel informed Roberson that if he desired to stay in the business analyst position, his pay and classification could be altered upward or downward depending on his evaluations after the trial period. Roberson disagreed with his placement, believing that he was qualified for a higher classification than Business Analyst II, but nonetheless accepted Alltel's offer. After beginning his trial period, Roberson filed his second complaint of discrimination in which he alleged that two co-workers walked past him with a computer cable shaped like a noose. Alltel conducted an investigation, but found no discrimination.

---

[1]Alltel assists employees to obtain "funded assignments," where clients pay for hours worked by the employees. Clients come to Alltel with specific needs and, in response, Alltel collects the resumes of employees with the requisite skill set and sends those resumes to the client. When an employee has no funded assignments Alltel places them on "unfunded assignments." Unfunded assignments benefit the company but generate no revenue.

At the end of the trial period, based on multiple evaluations of Roberson's work, Alltel offered Roberson two options: he could either stay in the Business Analyst II position at that classification's pay scale, which was significantly less than his Programmer II pay, or he could return to his classification as a Programmer II. Roberson disagreed with the evaluations and the proposed placement. Roberson then filed his third complaint of discrimination alleging that Alltel's decisions regarding his pay and placement in the business analysis field were discriminatory. He also reasserted the allegations from his previous discrimination complaints. Alltel conducted an investigation, but again found no discrimination.

Shortly after the conclusion of the third investigation, Alltel began a corporate-wide reduction-in-force. Eleven employees at the Irving, Texas office, Roberson among them, were included on the reduction-in-force list. After his termination, Roberson filed this lawsuit. The district court granted summary judgment to Alltel concluding that Roberson failed to prove that Alltel's employment decisions were based on impermissible considerations.

We review a district court's grant of summary judgment *de novo*. *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute regarding a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We construe the evidence in the light most favorable to Roberson and draw all reasonable inferences in his favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

# I

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1). The ADEA forbids "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The standard of proof for Title VII discrimination claims also applies to § 1981 claims, *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999), and ADEA claims. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). Because the same facts underlie all three causes of action, we conjunctively analyze Roberson's Title VII, § 1981, and ADEA claims. *See Bauer v. Albermarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999).

"The Title VII inquiry is 'whether the defendant intentionally discriminated against the plaintiff.'" *Johnson*, 351 F.3d at 621 (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)). Courts traditionally employ two frameworks for analyzing discrimination claims: "mixed-motive" and "single-motive" or "pretext." *See Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (mixed-motive); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) (pretext). Under the mixed-motive framework, the individual must demonstrate, by either direct or circumstantial evidence, that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons. *Price Waterhouse*, 490 U.S. at 241. Under the pretext framework, after the employee demonstrates a *prima facie* case of discrimination and the employer meets its burden of positing a legitimate, nondiscriminatory reason for the employment action, the

burden falls to the employee to establish that the employer's permissible reason is actually a pretext for discrimination. *Burdine*, 450 U.S. at 252-53; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973).

Roberson argues that the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), altered this traditional structure for analyzing discrimination claims. *Desert Palace* held that direct evidence of discrimination was not required to obtain a Title VII mixed-motive instruction. *Desert Palace*, 539 U.S. at 92, 101-02. While *Desert Palace* only explicitly addressed jury instructions, Roberson asserts that the opinion also implicitly altered the *McDonnell Douglas* burden-shifting framework such that summary judgment should only be granted if an employee fails to raise a genuine issue of material fact concerning whether or not a protected characteristic was a motivating factor in the employment decision. The few courts to address the implications of *Desert Palace* have reached varied results. Some conclude that *Desert Palace* overrules or greatly limits *McDonnell Douglas*.[2] Other courts find no tension between the two decisions.[3]

For purposes of this case we need not decide the fate of *McDonnell Douglas* because Roberson's claims fail under any interpretation of *Desert Palace*. Specifically, Roberson has not created a fact issue as to whether Alltel's adverse employment decision was, even in part, motivated by discriminatory animus. *Cf. McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004) (noting that "it is not particularly significant whether [the plaintiff] relies on the *McDonnell Douglas*

---

[2]*See, e.g.*, *Dunbar v. Pepsi-Cola Gen. Bottlers of Iowa, Inc.*, 285 F. Supp. 2d 1180, 1196 (N.D. Iowa 2003); *Griffith v. City of Des Moines*, 2003 WL 21976027, at *12 (S.D. Iowa July 3, 2003); *Dare v. Wal-Mart Stores, Inc.*, 267 F. Supp. 2d 987, 992 (D. Minn. 2003).

[3]*See Read v. BT Alex Brown Inc.*, 72 Fed. Appx. 112, 115 (5th Cir. 2003) (unpublished); *see also Herawi v. Ala. Dep't of Forensic Scis.*, 2004 WL 728408, at *8 (M.D. Ala. Apr. 5, 2004); *Winter v. Bank of America, N.A.*, 2003 WL 23200278, at *3 (N.D. Tex. Dec. 12, 2003).

presumption or . . . on direct or circumstantial evidence of discriminatory intent" because "[u]nder either approach, [the plaintiff] must produce some evidence suggesting that [the employer's] failure to promote him was due in part or whole to discriminatory intent, and so must counter [the employer's legitimate, non-discriminatory reason]"); *Allen v. City of Pocahontas, Ark.*, 340 F.3d 551, 557 n.5 (8th Cir. 2003) ("Without reaching the issue as to whether [*Desert Palace*] alters the burden-shifting analysis of *McDonnell Douglas*, the result in this case remains the same [because] Petitioner has provided no evidence, direct or circumstantial, from which a reasonable jury could logically infer that age or gender was a motivating factor in her termination.").

## II

In order to withstand summary judgment, Title VII requires that Roberson, using direct or circumstantial evidence, "present sufficient evidence for a reasonable jury to conclude . . . that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Desert Palace*, 539 U.S. at 101 (quoting 42 U.S.C. § 2000e-2(m)). Roberson argues that impermissible considerations, namely race, sex, and age, motivated Alltel's decision to include Roberson in its reduction-in-force.

The record clearly indicates that Alltel's reduction-in-force was based on objective criteria. Myra Helms, the human resources manager responsible for crafting the reduction-in-force list, started with a universe of approximately 260 employees and issued exceptions to: employees with a "job utilization percentage"[4] greater than 75%; managers, supervisors, and other administrative staff; employees who had undergone extensive training for internet development ("e-skills training"); employees designated as international candidates; employees slated for transfers; and employees at

---

[4]The job utilization percentage reflects the amount of time an employee works on funded assignments.

the Pittsburgh office, where a special initiative was underway. After applying these criteria Helms was left with 47 employees. Of these employees, Helms included on the reduction-in-force list those employees who were not working on funded assignments or who were working on funded assignments that were near completion. The remaining eleven employees, Roberson among them, were terminated.[5] In an affidavit, Helms testified that her "decision to include Mr. Roberson on the [reduction-in-force] list was based solely on objective criteria . . . [and] was not based in any way on Mr. Roberson's race, gender, or age." Roberson offers no evidence that Helms, the ultimate decision maker, relied on impermissible criteria when creating the reduction-in-force list.

In lieu of challenging Helms's motives, Roberson contends that the district court improperly credited Helms's testimony because Helms was an interested witness. Under *Reeves* we should consider and give weight to "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151 (quotation omitted). The record reveals that Helms's testimony was uncontradicted and unimpeached insofar as Roberson presented no evidence that Helms, the ultimate decisionmaker, relied on impermissible considerations. Furthermore, Roberson provides no valid reason why Helms was an interested witness except to suggest that all decisionmakers are, by definition, interested witnesses. However, this is not our law:

> The definition of an interested witness cannot be so broad as to require us to disregard testimony from a company's agents regarding the company's reasons for discharging an employee . . . . [T]o so hold would foreclose the possibility of summary judgment for employers, who almost invariably must rely on testimony of their agents to explain why the disputed action was taken.

---

[5]The demographics of those included on the pre-reduction-in-force list (47 employees) and on the reduction-in-force list (11 employees) do not reveal a discriminatory bias. Roberson does not allege otherwise.

*Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002).

Roberson also asserts that a "cat's paw" analysis should be applied to Helms's reduction-in-force decisions because she was influenced by others who harbored discriminatory animus. "If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary co-workers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). To invoke the cat's paw analysis, Roberson must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker "possessed leverage, or exerted influence, over the titular decisionmaker." *Id*. at 227; *see also Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003).

Roberson argues that the actions of Glynda Dickerson, Roberson's supervisor, should be imputed to Helms under the cat's paw analysis. In order to invoke the analysis, Dickerson must have demonstrated discriminatory animus such that it would be necessary to impute illicit motives from Dickerson to Helms. Roberson contends that Dickerson denied him training and assignment opportunities because of his race, sex, and age. Specifically, he asserts that Dickerson discriminated in choosing the employees that would receive e-skills training and funded assignments, both of which were objective criteria in the reduction-in-force list.

The record indicates that Dickerson did not make decisions regarding the distribution of funded assignments. Rather, undisputed evidence indicates that whether assignments were funded or unfunded was a decision made by Alltel's customers, *not* by Alltel or Dickerson. While a

supervisor could assist an employee in receiving funded assignments,[6] the client decided when to take on an Alltel employee and which employee would be hired. Roberson offers no evidence, save for his subjective opinion, that Dickerson discriminated in assisting his pursuit of funded assignments.[7] Likewise, the record reveals that Dickerson did not select who received e-skills training. Roberson does not attempt to establish who made the e-skills training decisions, except to state his subjective conclusion that Alltel failed to select him as a result of discrimination. Roberson's "subjective belief that [he] was not selected for the [ ] position based upon race or age is [ ] insufficient to create an inference of the defendants' discriminatory intent." *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999); *see also Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("This Court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment.") (quotation omitted).

Roberson offered two charts that, in his opinion, demonstrate Dickerson's discriminatory animus. Even assuming *arguendo* that Dickerson made the decisions regarding assignments and training, the "statistics" cited by Roberson simply are insufficient to withstand summary judgment. That is, even taken as true, Roberson's charts do not have "substantial probative value."[8] *Bauer*, 169

---

[6] Dickerson indicated that she would receive a client request for an employee with a particular skill set. She would then send to the requesting client the resumes of individuals with that skill set. Roberson does not argue that Dickerson withheld his resume or in any way prevented potential employers from considering him. Rather, he simply states that he did not get funded assignments and cites discrimination as the reason.

[7] Additionally, of the four unfunded assignments that Roberson received, two of them were a direct result of his desire to be reassigned to a Business Analyst position. That is, rather than searching for funded assignments in his area of expertise, Roberson requested, and was granted, the opportunity to demonstrate his qualifications in a new position.

[8] For instance, Roberson's chart regarding receipt of funded assignments cites to the five employees who reported directly to Dickerson. According to Roberson's chart, two of these five employees had "partially" funded assignments; one had "mostly" funded assignments; one had "60%" funded assignments; and one — Roberson — had

F.3d at 968; *see also EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1185-86 (5th Cir. 1996).

Roberson offers no evidence that Dickerson was motivated by discriminatory animus. Accordingly, a cat's paw analysis is inapplicable.[9]

In sum, Roberson has failed to present *any* evidence that forbidden characteristics played a role in Alltel's reduction-in-force decisions. *See Price v. Fed. Express Corp.*, 283 F.3d 715, 724-25 (5th Cir. 2002) (affirming grant of summary judgment because of "fail[ure] to present evidence from which a factfinder could infer racial discrimination"); *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000) (affirming grant of summary judgment based on "overall lack of any evidence of discriminatory intent").

III

For similar reasons, Roberson's retaliation claim also fails. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Roberson must show three elements: "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment

---

"not much" funded assignments. Roberson, however, makes no attempt to explain why the differences between partially, mostly, 60%, and not much demonstrate discrimination. Roberson's chart regarding those employees who received e-skills training is equally uninformative. Two of Dickerson's five employees received e-skills training: a forty-four year old Caucasian female and a forty-three year old African-American female. Roberson, a forty-nine year old African-American male did not. These statistics, without more, do not establish that Dickerson discriminated based on race, sex, or age in training and assignments sufficient to withstand summary judgment. *See Bauer*, 169 F.3d at 968 ("[M]ore than statistics are usually necessary to rebut an employer's strong showing of a legitimate, non-discriminatory reason for discharging a particular employee . . . .").

[9]Roberson alleges that a co-worker, Skip Steed, referred to him as "Jesse Jackson" because of his civil rights activism, and that Steed, along with a second co-worker, manipulated a computer cable into the shape of a noose. Roberson's brief does not contend that Steed's discriminatory actions should be imputed to Helms under a cat's paw analysis. This argument is waived on appeal. *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993). Even if Roberson had made the argument, there is no evidence that Steed had influence or leverage over Helms. *See Rios v. Rossotti*, 252 F.3d 375, 379-80 (5th Cir. 2001).

action occurred, and (3) that a causal link existed between the prot ected activity and the adverse employment action." *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

The district court concluded that Roberson's retaliation claim failed to establish a causal connection and, even if he had established a *prima facie* case, could not prove any action was taken because of Roberson's discrimination complaints. In order to withstand summary judgment, Roberson must offer evidence from which the jury may infer that retaliation, in whole or in part, motivated the adverse employment action. *See Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

Roberson argues that retaliation can be inferred from the fact that the reduction-in-force occurred after he filed his discrimination complaints.[10] However, we have made clear that "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Swanson*, 110 F.3d at 1188 n.3. Roberson also contends that after filing his discrimination complaints, Alltel "methodically denigrated [his] value" by denying him funded positions and e-skills training; denials which led to his inclusion on the reduction-in-force list. In addition to the fact that we already rejected Roberson's proposed application of a cat's paw analysis, there are also two gaping disconnects in Roberson's argument. First, since the training and assignment decisions themselves were not adverse employment actions, they must be connected to the reduction-in-force. However, nothing in the record suggests that the training and assignment decisions were made with prescient knowledge of the yet-to-be ordered reduction-in-force. Second,

---

[10]Roberson's discrimination complaints were based on: (1) the reclassification from SEA to Programmer II; (2) the noose incident; and (3) the "catch-22" of being offered placement in a Business Analyst II position with decreased salary or remaining as a Programmer II.

Roberson presents no evidence that Helms knew that he lacked e-skills training and sufficient funded assignments when she established the objective criteria.

Thus, Roberson's argument is reduced to the following: the sole evidence of Alltel's retaliation is that the reduction-in-force occurred after his discrimination complaints. On the other hand we have Alltel's undisputed legitimate, nondiscriminatory reason for its employment action: a company-wide reduction-in-force. Without more than timing allegations, and based on Alltel's legitimate, nondiscriminatory reason in this case, summary judgment in favor of Alltel was proper. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) ("Other than the five month time period, Raggs has presented no evidence of retaliation. Thus, we conclude that MP&L's decision not to rehire Raggs in 1999 was not a function of retaliation."); *Evans*, 246 F.3d at 356; *Swanson*, 110 F.3d at 1188 & n.3.

IV

"The ultimate question in every employment discrimination case . . . is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153. Roberson failed to present sufficient evidence such that a reasonable factfinder could infer intentional discrimination. We AFFIRM the district court's grant of summary judgment.