United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 8, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 03-21150

———————————

ANNA L. KOLPAKCHI, Medical Doctor,

Plaintiff-Appellant,

versus

ANTHONY J. PRINCIPI, Secretary of Veterans Affairs,

Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
H-02-CV-2683
--------------------

Before BENAVIDES, DENNIS, and CLEMENT, Circuit Judges.

BENAVIDES, Circuit Judge: *

In this direct civil appeal, Anna L. Kolpakchi, Appellant,
challenges the district court's ruling granting summary judgment
to Anthony J. Principi, Secretary of Veterans Affairs, Appellee.
For the reasons that follow, we affirm.

**I. Background**

Physician Anna L. Kolpakchi began working for the Department

---

* Pursuant to 5TH CIR. R. 47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

of Veterans Affairs Medical Center ("VAMC") in Houston on July 1, 1987. In July 1995, she was promoted to Employee Health Physician for the Medical Center, which, although not technically categorized as supervisory, included the duty of overseeing subordinates. As of 1998, the Chief of Staff at the VAMC was Dr. Thomas B. Horvath.

On July 19, 2000, Dr. Horvath declared the Employee Health Physician position "vacant" and asked for applications, indicating that now the position would include new supervisory duties. One requirement added to the job description was that any applicant must have at least fifteen years of clinical experience. According to Dr. Kolpakchi, she was confused by the new job description, believing she already performed supervisory duties, and was deterred from applying because she only had thirteen years of clinical experience. Because of this and the fact that she had performed her duties to date well, Dr. Kolpakchi deduced she was the target of discrimination due to her status as a female, a Jew, and a Russian immigrant. She held this belief in spite of the fact that, when Dr. Horvath informed her of the pending employment action, he encouraged her to apply for the new job. Dr. Kolpakchi filed a discrimination grievance with the office of Joint Management Resolutions ("EEO").

After Dr. Kolpakchi filed her complaint, Dr. Horvath sent her a letter, once again, encouraging her to apply for the new position. This encouragement was echoed by her EEO counselor,

Ms. Charlyn F. Stewart. Dr. Kolpakchi voiced her concern about the fifteen-year requirement and the vacancy announcement was amended, with that requirement removed. However, Dr. Kolpakchi did not apply for the position. She claims she was unaware of the requirement change.

On October 18, 2000, Dr. Horvath sent a letter to Dr. Kolpakchi informing her that a different doctor, Dr. Jamie Oritz-Toro, would be filling the Employee Health Physician position and that, effective October 29, 2000, she was reassigned to the Prime Care Section of Medical Services to serve as a primary physician. Upon learning her replacement was male (and in her opinion less qualified), Dr. Kolpakchi filed a second grievance with the EEO office, alleging sex discrimination. After a final, unsatisfactory agency decision on Dr. Kolpakchi's claims was issued on April 17, 2002, she filed a sex discrimination suit against Anthony J. Principi, Secretary of Veterans Affairs, under Title VII.

The complaint, filed on July 17, 2002, alleged discrimination based on sex, religion, and national original, in addition to threatened retaliation. Defendant Principi filed a motion to dismiss, under Federal Rule of Civil Procedure 56. The district court granted the motion to dismiss. This appeal of that order followed.

**II. Discussion**

3

This Court reviews grants of summary judgments under Rule 56 de novo, applying the same standards the district court used. *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 486 (5th Cir. 2004). "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Id.* Facts are material only if they could affect the lawsuit's outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any factual controversy will be resolved in the nonmovant's favor, but only "when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

**A. Prohibited Discrimination Under Title VIII**

Dr. Kolpakchi argues that VAMC's treatment of her violated Title VII of the Civil Rights Act of 1964, codified as 42 U.S.C. §§ 2000(e) et seq. When considering employment discrimination claims lacking direct evidence, the Supreme Court has set forth a methodology for determining "the order and allocation of proof." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). In the *McDonnell Douglas* case, the Court dictated that the plaintiff, in this case Dr. Kolpakchi, carries the initial burden to set forth a prima facie case of discrimination. *Id.* at 802.

4

Under the *McDonnell Douglas* framework, "a plaintiff satisfies this initial burden by showing that (1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003).

There are essentially two employment actions in this case. First, Dr. Kolpakchi was removed from her old position, which was eliminated through a restructuring process. She does not challenge this portion of the employment action. Second, Dr. Kolpakchi was not given the new position created in this reorganization process in lieu of her old one and was instead given a less desirable post. This is the employment action she claims violated her Title VII rights.

The district court assumed that Dr. Kolpakchi had made out a prima facie case. She is a female, a Jew, and a Russian immigrant. Discrimination based on national origin, religion, or sex is prohibited by Title VII. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003). Dr. Kolpakchi did not receive the promotion to the new position and instead received a less desirable one – undoubtedly constituting an adverse employment action. And she was replaced by a man–someone outside her protected class. Finally, the evidence suggests Dr. Kolpakchi was qualified for the job. She was the incumbent holder of the

position, and, even though its duties were augmented, she was encouraged by her superiors to apply.  However, she failed to adequately seek the position by applying for it and thus did not meet the second requirement to establish a prima facie case.[1]

The question of whether a plaintiff in the Title VII context actually applied for a particular position goes to the question of whether the plaintiff has proffered a prima facie case.  The second *McDonnell Douglas* prong ("he was qualified for the position sought") requires the position to actually be *sought* – without that, normally a plaintiff cannot be denied employment.

Citing an opinion by the Third Circuit, Dr. Kolpakchi argues that she did not have to actually apply for the position because she "made every reasonable attempt to convey [her] interest in the job."  *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990).  And she was effectively discouraged from filing a formal application because the original job announcement had a requirement of fifteen years of clinical experience, which Dr. Kolpakchi did not have.  *Metal Service Co.* states that "failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim" in "failure to promote cases."  *Id.*  In that case, the court found that the plaintiffs "did everything reasonably possible to make known to

---

[1]Although the district court granted Defendant's motion on other grounds, we may affirm for different reasons.  *Kerr v. Comm'r of Internal Revenue*, 292 F.3d 490, 494 (5th Cir. 2002).

6

[the defendant] their interest in applying for a job," including attempting to apply directly at the office, going through the hiring department, "periodically check[ing] on their applications," and again trying to apply directly.  *Id.* at 349.

The Third Circuit cites two other circuit court cases that also hold the failure to apply does not necessary bar the establishment of a prima facie case under Title VII.  The Fourth Circuit found that an African-American plaintiff did not need to file a formal application where he was told he would be considered for the position and was not asked to file an application, and where the defendant "had actively discouraged [African-Americans] from applying for sales jobs."  *Holsey v. Armour & Co.*, 743 F.2d 199, 208-09 (4th Cir. 1984).  In *Paxton v. Union National Bank*, the plaintiff had expressed an interest in the position prior to its vacancy, but, once it did become vacant, no notice was posted and it was filled without his knowledge.  688 F.2d 552, 568 (8th Cir. 1982).

*Metal Service Co.* and other cases like it are the progeny of the Supreme Court's ruling in *International Brotherhood of Teamsters v. United States*.  431 U.S. 324 (1977).  The Court held that, even if one does not apply for a particular position, individuals can "suffer from discriminatory employment practices" when "[a] consistently enforced discriminatory policy" deters them from applying because they "are aware of it and are

7

unwilling to subject themselves to the humiliation of explicit
and certain rejection." *Id.* at 365.  *See also Shackelford v.
Deloitte & Touche, L.L.P.*, 190 F.3d 398, 406 (5th Cir. 1999)
(applying *Teamsters*).  The Court further expounded on this issue,
presenting the reasoning behind the rule:

> If an employer should announce his policy of
> discrimination by a sign reading "Whites Only" on the
> hiring-office door, his victims would not be limited to
> the few who ignored the sign and subjected themselves to
> personal rebuffs. The same message can be communicated to
> potential applicants more subtly but just as clearly by
> an employer's actual practices . . . .

*Teamsters*, 431 U.S. at 365.

The Supreme Court's holding in *Teamsters* would seem to bar
Dr. Kolpakchi's claim because she has not set forth any facts to
show a policy of discrimination that dissuaded her from applying
for the position.  At best, the facts, as alleged by Dr.
Kolpakchi, may show that Dr. Horvath did not believe Dr.
Kolpakchi was the ideal employee for the position.  However, the
holdings in *Paxton* and *Metal Service Co.* indicate an expansion of
this principle to encompass situations where, through the fault
of the employer, an employee's desire to hold a position is not
recognized or properly considered.  We have not explicitly
adopted our sister circuits' rules with regards to the necessity
of a formal application; nor have we specifically rejected such a
more expansive rule.  The District Court for the Southern
District of Texas has accepted it, though.  *See DuPont-Lauren v.*

8

*Schneider (USA), Inc.*, 994 F. Supp. 802, 818 (S.D. Tex. 1998) (stating that "a formal application will not be required where a vacant position was not posted"); *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 794 (S.D. Tex. 1998) (same).

Even if we were to apply this more lenient standard, Dr. Kolpakchi's case does not satisfy it. In her statement, she claims she "was not notified of the last [corrected] posting or [o]f any change in the 15 years of clinical experience requirement, prior to the closing of the posting." This is directly contradicted by the statement of her EEO counselor, Ms. Charlyn F. Stewart, who stated in a deposition that she informed Dr. Kolpakchi of the change in the requirement. Whether or not Dr. Kolpakchi knew of the requirement change is an issue of fact and we must assume Dr. Kolpakchi's version is correct. However, the following facts, which can be taken as true either because they are asserted by Dr. Kolpakchi or because she has not contested them, completely undermine her argument:

> (1) Dr. Horvath told Dr. Kolpakchi to apply for the position during their initial meeting on July 13, 2000, when he told her about the pending employment action: "Dr. Horvath told me that they wanted me to be the first person to see the announcement. . . . Dr. Horvath then told me that I should apply for the job. He further advised me that he would personally see to it that the committee would not be biased toward me and that if I did not get the position he was posting, he would guarantee that I would have a job within the Medical Center."

> (2) On July 17, 2000, shortly after the meeting in which Dr. Horvath told Dr. Kolpakchi about the change in her position, he sent her a letter stating that he hoped she would apply

9

for the new position: "As part of our overall Reorganization we are restructuring Employee Health.  We decided to create a Supervisory Physician, who will report directly to me. . . . It is an interesting and challenging position, and I would encourage you to consider it.  I would be happy to discuss it with you – please call Ms. Jackson at ext. 7011, ASAP. . . . I would hope to get a number of local applications, including one from our current employee health physician."

(3) Dr. Horvath knew that Dr. Kolpakchi did not have fifteen years of clinical experience when he encouraged her to apply for the position.

(4) The position vacancy announcement was twice amended to correct errors in the requirements due to Dr. Kolpakchi's complaints.  In addition, Dr. Horvath informed Ms. Stewart that the fifteen-year requirement in the original announcement was an error and said to her, "Please tell your client to apply."

(5) Dr. Kolpakchi made a conscious decision not to apply for the position.

In light of these facts, it cannot be said that, whatever impediment the incorrect job posting with the fifteen-year requirement posed to Dr. Kolpakchi's applying for the position, it rose to the level of *Paxton* and *Metal Service Co.*  Despite her assertions, and unlike the plaintiff in *Metal Service Co.*, Dr. Kolpakchi did not make "every reasonable attempt to convey [her] interest in the job."  892 F.2d at 348.  Simply put, she failed to apply for the position despite Dr. Horvath's and Ms. Stewart's entreatments.  That would have been the most reasonable way for her to convey her interest in the position.  And, unlike the plaintiff in *Paxton*, she knew full well about the opening and chose not to apply.  *See* 688 F.2d at 568.  Dr. Kolpakchi cannot reasonably claim that this rises to the level of non-notice of

the opening.  She did not apply for the position and thus cannot make out a prima facie case of employment discrimination.[2]

Because she failed to apply for the desired position, Dr. Kolpakchi cannot present a prima facie case.

## B. Prohibited Retaliation Under Title VII

Dr. Kolpakchi alleges retaliation on the part of VAMC because of her employment complaints.  Title VII of the Civil Rights Act of 1964 outlaws any discrimination against an employee, because that employee "has opposed any practice made an unlawful employment practice" by the Act.  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, Dr. Kolpakchi must show (1) that her activity was protected by Title VII; (2) that she has suffered an adverse employment action; and (3) that there existed a "causal link" between the action and the protected activity.  *See Roberson v. Alltel Info.*

---

[2]Dr. Kolpakchi responds that she did not need to apply for the job because there is direct evidence of discrimination.  The Supreme Court has held that, in situations where the promotion policy is discriminatory on its face, questions about whether or not there were actual openings applied for is irrelevant. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).  This is because, with such direct evidence, the case no longer fits into the *McDonnell Douglas* burden shifting analytic framework.  Only as part of that framework in a lawsuit based on circumstantial evidence must a prima facie case be established.  In *Trans World*, the policy at issue explicitly penalized pilots because of their age, advantaging younger pilots. *See id.*  Dr. Kolpakchi has not alleged such a discriminatory policy in this case.  At best, she can hyperbolically argue that the "hiring process . . . could not have been [more] evasive and confusing."  This does not make it discriminatory on its face.

*Servs.*, 373 F.3d 647, 655 (5th Cir. 2004).

Dr. Kolpakchi claims that she engaged in protected activity by filing claims of discrimination. This element is uncontested. She states that she has also suffered a number of adverse employment actions: "(1) [D]eclaring her position to be vacant while she was the incumbent; (2) Posting of an incumbent's position; (3) Removing her from her incumbent position; (4) Transferring her to a position that has fewer responsibilities and; (5) [R]eplacing her with a male physician . . . ." All of these actions are really derived from or are the result of two actions: (1) eliminating her position and creating a new one in its place; and (2) not hiring her for the new position.

The Supreme Court has instructed that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Undoubtedly, both actions meet this standard. However, the first of these, the recharacterization and vacating of Dr. Kolpakchi's position, occurred prior to her protected behavior, as she filed her complaint in response to that action. Therefore, the only adverse action at issue was Dr. Horvath's decision not to hire Dr. Kolpakchi.

Finally, Dr. Kolpakchi must show a "causal link" between not being hired for the Employee Health position and her filing of the EEO complaint.  Assuming arguendo that Dr. Kolpakchi did apply for the position, she has alleged no facts showing a causal link between the decision not to hire her and her protected activity.  Her only argument is "that soon after [she] participated in a protected activity an adverse employment action occurred."  She is right that we have found that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."  *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).  "However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."  *Id.*

Because Dr. Kolpakchi's old position was eliminated and a new one just created, Dr. Horvath needed to hire someone to fill that position.  Since Dr. Kolpakchi filed her complaint shortly after that first adverse employment action, the hiring decision for the new position necessarily had to be in close temporal proximity to her complaint.  Timing alone, in this instance, holds no probative value.

Thus, the District Court correctly concluded that Dr.

13

Kolpakchi failed to make a prima facie showing of retaliation in violation of Title VII.

Accordingly, we AFFIRM the district court's ruling.

AFFIRMED

14