# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 8, 2008

Charles R. Fulbruge III
Clerk

No. 06-20988

TUNDE A AJAO

Plaintiff-Appellant

v.

BED BATH AND BEYOND INC; BED BATH AND BEYOND OF
MEYERLAND INC; STAFFORD BED BATH AND BEYOND INC; WEST
OAKS BED BATH AND BEYOND INC

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CV-2271

Before BARKSDALE, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Tunde A. Ajao appeals an adverse summary judgment against his race-discrimination and retaliation claims. AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Ajao, whose national origin is Nigerian, is a black employee of Bed Bath and Beyond (BB&B). He was hired as a department manager for its Meyerland, Texas, store on 27 September 1999, after interviewing with, among others, Doug Baumann, the store's manager. Ajao was informed he could, contingent upon his performance, be promoted to assistant store manager within three months. For the Houston, Texas, area, the Meyerland location functions as a training store, from which employees are transferred to other stores when positions become available.

There is no formal process to apply for a promotion; an employee simply expresses interest to a supervisor and is considered by the store manager, Baumann. Baumann then makes a recommendation to the district manager, who makes the final decision but generally follows Baumann's recommendations. Ajao was not promoted before his last day of work, 7 July 2001 (as discussed infra he is still an employee), despite expressing interest and being told he was under consideration. Unless otherwise noted, the following facts are from Ajao's sworn declaration and deposition.

At BB&B, Ajao stocked his department and helped customers, reporting to assistant store managers, operations managers, and the store manager, Baumann. He began in the customer-service department, but, over time, was transferred by Baumann to other departments in order to learn about the store and gain experience. Upon Ajao's first transfer from customer service, Baumann told him he had done a good job and would be transferred to the housewares department and a "software" department, like linens, before he would be promoted to assistant store manager.

2

After being transferred from housewares to linens, Ajao expected next to be promoted; instead, Baumann transferred him to the bath department. Ajao worked in each of the three departments "some months", and admits he could have been working at BB&B for less than a year when he was transferred to the bath department. More transfers followed every few months: the seasonal department, the receiving department for a week or two, back to housewares, and finally back to linens.

The possibility of Ajao's promotion was discussed with almost every transfer; Baumann assured Ajao he was being considered and would be promoted. Upon his transfer back to housewares, Ajao asked what he needed to do to be promoted. Baumann responded: whining and crying too much for a promotion would not do him any good.

Ajao contends: when he was transferred from housewares to linens, Baumann told him he was not up for promotion and would not be promoted. Baumann stated in his deposition that he provided Ajao with a list of areas, including attendance, in which he needed improvement; Ajao denied receiving the list.

For this action, BB&B produced the following July 2000 disciplinary notice: "This year, [Ajao] has called out sick on the following dates: 1/5, 1/6, 4/22, 6/7, 6/17, 6/18, 7/9 and 7/10. This is excessive absenteeism". Ajao does not dispute the notice's authenticity or accuracy. When presented with it during his deposition, Ajao asserted he had never seen the document before and was not spoken to about his absenteeism; instead, Baumann held a meeting, during which he told all the managers to be on time and not to call in sick. Baumann stated in his deposition he would not promote an employee with poor attendance to an assistant-store-manager position, because they are responsible for

3

unlocking the store in the morning.

Ajao maintains Baumann made the following inappropriate and offensive comment to him about a year into his employment (began in September 1999). While Ajao was folding and stocking towels in the bath department, he began having an allergic reaction to the lint and asked Baumann for a nasal guard; Baumann, however, denied his request, telling Ajao: he, of all people, should know how to deal naturally with cotton. Ajao does not know whether the comment referred to his race or national origin, but contends it shows Baumann actively considered Ajao's race in the workplace.

In March 2001, Ajao filed a complaint with the Equal Employment Opportunity Commission (EEOC), charging BB&B with race discrimination for its failure to promote him. His EEOC complaint asserted white applicants and employees were treated more favorably at BB&B: white applicants are usually interviewed on the spot when they come into the store; black store associates were not promoted to department manager positions as were white store associates; injured or pregnant black employees were not treated as favorably as injured or pregnant white employees; black employees are not promoted to assistant store manager (or higher) positions; and, specifically, Baumann told Ajao he would not be promoted to assistant store manager but promoted white department managers with less tenure to assistant-store-manager positions.

Ajao admitted in his deposition that black department managers were promoted, but contends this occurred only after employees threatened to, or did, make complaints to the EEOC. He cannot say he was better qualified than, or

4

attest to the qualifications of, the white department managers who were promoted.

In July 2001, after Ajao suffered a back injury while working in the linens department, he consulted with a doctor and went on medical leave. He received a medical release to return to work, but it imposed restrictions on how much weight he could lift. A worker's compensation work-status report presented by Ajao to BB&B, from a 6 August 2001 doctor's visit (which was presented to Ajao during his deposition) stated Ajao could return to work as of 11 August 2001 if he did not lift or carry objects weighing more than five pounds until later that month (the precise date is undecipherable). Ajao's other restriction was "work bordering light duty for 2 wks".

Ajao recounted that, as a department manager in the linens department, he was required very often to climb ladders, lift more than five pounds, and lift items from the floor or above his head. Baumann admitted BB&B has given light-duty assignments to employees for medical reasons. BB&B submitted a list of them.

Ajao stated: he was released for work only two weeks after his injury, at which time he called Baumann to inform him of his intent to return, and faxed a copy of his doctor's release – with lifting restrictions – in accordance with Baumann's request; the next day, when Ajao reported to BB&B, however, Baumann called him into his office and told him he could not return to work until he was 100% recovered; Ajao asked Baumann to accommodate the restrictions his doctor imposed, to allow him to return to work and have other employees lift and stock items for him; but Baumann refused. Ajao does not contend he told BB&B how long he would need light-duty work assignments; indeed, he has not been released for work without lifting restrictions. Ajao has

neither returned to work nor been terminated by BB&B.

In April 2003, the EEOC issued a determination letter following its investigation of Ajao's discrimination charge, stating it had found "reasonable cause to believe [BB&B] discriminated against [Ajao] by not promoting him to the position of assistant store manager because of his race". The EEOC notified Ajao in March 2004 of his right to file an action under Title VII. Four other BB&B employees had also filed complaints and received similar determination letters.

That June, Ajao (and four other BB&B employees) filed this action. They claimed, inter alia: race discrimination (as evidenced by the failure to promote Ajao) and retaliation (against Ajao for his EEOC complaint, by not granting his request to accommodate his lifting restrictions so he could return to work), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and state law.

BB&B moved for summary judgment in June 2006, attaching excerpts from depositions of Ajao and two of his former BB&B managers, Baumann and Russell. Plaintiffs responded that July, including a declaration by Ajao, certified copies of documents from the EEOC's investigation of the four BB&B employees' complaints, and excerpts from Baumann's and Ajao's depositions. BB&B replied that August with objections to Ajao's summary-judgment evidence.

In late October 2006, a joint stipulation was granted, dismissing the claims of all plaintiffs except Ajao. That month, the district court granted summary judgment to BB&B, ruling, inter alia, Ajao failed: to provide evidence rebutting the legitimate, nondiscriminatory reasons proffered by BB&B in response to his failure-to-promote race-discrimination claim; or to demonstrate,

for his retaliation claim, BB&B's refusal to accommodate his lifting restrictions to allow him to work was a materially adverse employment action.

## II.

A summary judgment is reviewed de novo, applying the same standard as did the district court. E.g., Wheeler v. BL Dev. Corp., 415 F.3d 399, 401 (5th Cir. 2005). Such judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "We resolve doubts in favor of the nonmoving party and make all reasonable inferences in favor of that party." Dean v. City of Shreveport, 438 F.3d 448, 454 (5th Cir. 2006). No genuine issue of material fact exists if, pursuant to the summary-judgment evidence, no reasonable juror could find in favor of the nonmovant. E.g., Jenkins v. Methodist Hosps. of Dallas, Inc., 478 F.3d 255, 260 (5th Cir.), cert. denied, 128 S. Ct. 181 (2007).

Ajao appeals only the dismissal of his discrimination and retaliation claims. Each claim fails.

## A.

Title VII prohibits an employer from, inter alia, failing to promote an employee on the basis of his race. 42 U.S.C. § 2000e-2(a)(1). Ajao contends he created a genuine issue of material fact on whether BB&B's failure to promote him to assistant store manager was for that proscribed reason. Accordingly, the proper "inquiry is whether [BB&B] intentionally discriminated against [Ajao]". Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007) (quoting Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004)). Because Ajao relies only upon circumstantial evidence of discrimination to prove this claim, it is analyzed under the McDonnell-Douglas burden-shifting framework. Id. (citation omitted).

> Under this framework, [Ajao] must first create a presumption of intentional discrimination by establishing a prima facie case. The burden then shifts to [BB&B] to articulate a legitimate, nondiscriminatory reason for its actions. . . . If [BB&B] sustains its burden, the prima facie case is dissolved, and the burden shifts back to [Ajao] to establish either: (1) that [BB&B's] proffered reason is not true but is instead a pretext for discrimination; or (2) that [BB&B's] reason, while true, is not the only reason for its conduct, and another "motivating factor" is [Ajao's] protected characteristic.

Id. (citations omitted); see also Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005). Ajao established his prima facie case; the balance of the burden-shifting process is in dispute.

### 1.

The next step is BB&B's burden to present a legitimate, non-discriminatory reason for not promoting Ajao. He maintains it failed to do so for two reasons.

### a.

As a threshold matter, Ajao contends the district court improperly credited Baumann's testimony because he is an interested witness. The court "should consider and give weight to 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses'". Roberson, 373 F.3d at 653 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)). Ajao asserts Baumann, the decision-maker who failed to promote him, is not a disinterested witness because his statements are self-serving. But, obviously, "'[t]he definition of an interested witness cannot be so broad as to require us to disregard testimony from a company's agents regarding the company's reasons for [failing to promote] an employee'". Id. (quoting Sandstad v. CB Richard Ellis, Inc., 309

F.3d 893, 898 (5th Cir. 2002)). Further, as stated above, BB&B's burden is merely one of production; as such, "it 'can involve no credibility assessment'". Reeves, 530 U.S. at 142 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

b.

In contending BB&B failed to adequately articulate a legitimate, non-discriminatory reason for not promoting him to an assistant-store-manager position, Ajao concedes Baumann "offered four reasons[,] . . . attendance, inadequate follow through on projects, poor communication with associates, and lack of initiative". He maintains this is not sufficient evidence because few details were given to support those reasons. Again, BB&B bears only the burden of production to articulate a clear, reasonably specific, legitimate, non-discriminatory reason. E.g. Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004); Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir. 2001).

Baumann's deposition, describing examples of Ajao's poor work performance (including attendance, follow through, communication, and initiative) is admissible summary-judgment evidence regarding Ajao's not being promoted because of his poor work performance. The district court correctly concluded BB&B met its burden. See, e.g., Crawford v. Formosa Plastics Corp., La., 234 F.3d 899, 902 (5th Cir. 2000) (finding "unsatisfactory performance as a manager" sufficient to meet burden of production).

2.

Accordingly, the burden shifts back to Ajao to show BB&B's proffered legitimate, non-discriminatory reason was simply pretext. He contests it on two bases.

a.

First, Ajao contends summary judgment against his discrimination claim was improper because he created a genuine issue of material fact on whether the true reason he was not promoted is his race. He contends BB&B's proffered legitimate, non-discriminatory reason for not promoting him – his poor performance – is false. A plaintiff relying on pretext must "produce evidence rebutting all of a defendant's proffered nondiscriminatory reasons". Machinchick, 398 F.3d at 351 & n.16. Ajao maintains BB&B produced no documentation to support his alleged poor performance, and denies Baumann gave him a list of needed improvements. Ajao, however, does not attempt to refute BB&B's evidence that he performed poorly. He provided no evidence of his own attendance, follow-through on projects, communication, or initiative, thereby failing to rebut any of BB&B's reasons for not promoting him. Accordingly, he failed to create a genuine issue of material fact on whether the poor-performance reason given by BB&B was mere pretext for discrimination. See id. at 354-55 (finding plaintiff failed to raise a fact issue as to his willingness and ability to adapt).

b.

As discussed supra, Title VII is also violated when race "'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome'". Reeves, 530 U.S. at 141 (alteration in original); see

also 42 U.S.C. § 2000e-2(m). Ajao maintains he provided sufficient evidence to create a genuine issue of material fact on whether his poor performance was only one of the reasons he was not promoted, with another reason being Baumann's discriminatory intent.

"'If [Ajao] demonstrates [race] was a motivating factor in the employment decision, it then falls to [BB&B] to prove that the same adverse employment decision would have been made regardless of discriminatory animus.'" Machinchick, 398 F.3d at 352 (quoting Rachid, 376 F.3d at 312). Although Ajao has produced circumstantial evidence of discrimination, he has not created a genuine issue of material fact on whether his non-promotion was due to race. BB&B's undisputed evidence establishes: Ajao had a poor attendance record; and poor attendance alone was enough to prevent his being promoted to assistant store manager. Because Ajao has not attempted to dispute his poor attendance or the necessity of a good attendance record for promotion to assistant store manager, he did not create a genuine issue of material fact on whether BB&B's failure to promote him was motivated by discrimination rather than by his poor performance.

B.

Title VII prohibits an employer from discriminating against an employee because, inter alia, he filed a discrimination charge. LeMaire v. La. Dept. of Transp. & Dev., 480 F.3d 383, 388 (5th Cir. 2007) (quoting 42 U.S.C. § 2000e-3). For his other basis for appeal, Ajao maintains summary judgment was improper against his retaliation claims under federal and state law because Baumann's refusal to give him light-duty assignments to allow him to return to work was

11

in retaliation for his EEOC complaint. Once again, the burden-shifting process is involved.

First, Ajao must produce evidence of a prima facie case of retaliation by demonstrating: "(1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action". Id. (citation omitted). If he does so, "the burden shifts to [BB&B] to state a legitimate, non-retaliatory reason for its decision". Id. (citation omitted). Once stated, "the burden shifts back to [Ajao] to demonstrate [BB&B's] reason is actually a pretext for retaliation". Id. at 388-89 (citation omitted). He fails, however, to create a genuine issue of material fact on whether he establishes his prima facie case.

a.

Ajao contests the district court's holding he failed to show he was subjected to an adverse employment action – the above-described second prong for his prima facie case for retaliation. For that prong, Ajao "must show that a reasonable employee would have found the challenged [employment] action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'". Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006) (emphasis added) (citation omitted); see McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007). The challenged employment action must be viewed in context; its significance "depends on a constellation of surrounding circumstances, expectations, and relationships". Burlington, 126 S. Ct. at 2415 (citation and internal quotation marks omitted); see McCoy, 492 F.3d at 560-61 (finding mandatory paid administrative leave could be materially adverse).

12

Ajao contends BB&B's denial of his request for light-duty assignments to allow him to return to work would be "materially adverse" to a reasonable employee in his position because other employees received such assignments. BB&B admits other employees received light-duty assignments for temporary medical reasons. Denial of a benefit that is available to another employee could be materially adverse, depending on the surrounding circumstances. Burlington, 126 S. Ct. at 2415 (finding schedule change or exclusion from professional lunch could be materially adverse).

Here, however, we have little context by which to measure the challenged employment action. Ajao has not endeavored to show his circumstances are similar to those of employees who received light-duty assignments, and he still has doctor-imposed restrictions on his ability to lift. This adverse-employment-action question need not be decided, however, because Ajao cannot prove the remaining element of his prima facie case – a causal connection between BB&B's refusal to grant his light-duty request and his EEOC charge.

b.

For the above-described third prong (causal connection) for his requisite prima facie case, Ajao contends BB&B's denial was due to his EEOC charge; he bases this, however, solely on the employment action at issue having occurred only four months after he filed the charge. "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." McCoy, 492 F.3d at 562 (citation and internal quotation marks omitted). On the other hand, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient

evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'". Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing cases where a three- or four-month period was insufficient to show causal connection); see also Russell v. Univ. of Tex., 234 F. App'x 195, 207 (5th Cir. 2007) (unpublished) (holding "evidence of temporal proximity alone cannot sustain an inference of causation when there is a six-month gap between the protected activity and the alleged adverse employment action").

Even assuming Ajao attempted to return to work on 21 July 2001, temporal proximity of four months is not close enough, without additional supporting summary-judgment evidence, to establish a causal connection between the employment action and the protected conduct. Accordingly, for summary-judgment purposes, Ajao fails to establish his prima facie case.

III.

For the foregoing reasons, the judgment is AFFIRMED.