TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00763-CV






Antonio Nash, Appellant


v.


The Blood and Tissue Center of Central Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. GN203828, HONORABLE PATRICK KEEL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 In this employment discrimination case, Antonio Nash appeals from the trial court's
summary judgment in favor of The Blood and Tissue Center of Central Texas ("BTC"). In three
issues, Nash challenges the grant of summary judgment. Because we find that BTC carried its
burden establishing its right to summary judgment while Nash failed to establish that any genuine
issue of material fact remained, we affirm the trial court's judgment.


BACKGROUND


 Antonio Nash was employed as a facilities manager at BTC from October 2000 to
May 2001, when he was fired. Nash was the only African-American candidate when he was selected
for the position over several qualified applicants by Denise Ballinger, the Director of Human
Resources, and Arlin Hall, the Chief Financial Officer. Ballinger and Hall were Nash's supervisors
during his employment at BTC and they ultimately made the decision to fire Nash.

 Although Nash claims that he felt singled out based on his race starting his first day
at BTC, the events leading to his termination began in the spring of 2001. In early April, Nash
reported that Micah Benites, a subordinate "line-worker," was working under the influence of drugs
and alcohol. Nash initially communicated this to Charlie Pate, Benites's direct supervisor, and to
Hall. Nash then reported Benites's suspected drug use to Ballinger on May 1. The following day,
Benites reported to Ballinger that he believed Nash violated BTC's sexual harassment policy. 
Specifically, Benites said that Nash made an inappropriate comment about a female housekeeper and
that Nash gave his keys to another employee, telling him to bring the housekeeper to Nash's office. 

 Ballinger investigated both reports. Although witnesses corroborated Benites's
allegations that Nash violated the company's sexual harassment policy, no one corroborated Nash's
accusations that Benites used drugs or alcohol at work. Two witnesses also reported that Nash
approached subordinate employees to initiate discussion about Benites's suspected alcohol use. 
Such conduct would violate BTC's confidentiality policy, which states that, if an employee suspects
another employee of being under the influence, the employee must maintain strict confidence and
only notify a supervisor and a representative from human resources about the concern. At the
conclusion of the investigation, Ballinger and Hall met with Nash to discuss their findings. At that
time, Nash accused Benites of being a convicted felon and said he obtained this information through
a criminal background check of Benites. (1) Ballinger replied that it was "totally unacceptable" and
against company policy for a manager to conduct a criminal background check on another employee
without prior authorization.

 Ballinger and Hall terminated Nash, citing three violations of company policy as the
basis for their decision: engaging in sexual harassment, failing to keep his suspicions about another
employee's possible drug use confidential, and running an unauthorized background check on
another employee. Nash disputes the allegations, but he acknowledges that Ballinger informed him
that his termination was based on these three violations.

 Nash obtained a "right to sue" letter from the Texas Commission on Human Rights
in August 2002 and timely filed suit in the district court against BTC for racial discrimination,
retaliation, and intentional infliction of emotional distress. See Tex. Lab. Code Ann. §§ 21.051-.556
(West 1996). BTC responded by moving for summary judgment, which the trial court granted in
BTC's favor, dismissing all claims against Nash. Nash now appeals the summary judgment, seeking
reversal solely on the racial discrimination claim.


DISCUSSION



Summary Judgment Pursuant to Rules 166a(c) and 166a(i)


 We review the trial court's decision to grant summary judgment de novo. Natividad
v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). In reviewing a summary judgment in which the
trial court has not provided the specific basis for its decision, we must review each argument asserted
in the motion and affirm the trial court's judgment if any of the arguments is meritorious. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). BTC sought summary judgment pursuant
to both Rule 166a(c) and 166a(i). See Tex. R. Civ. P. 166a(c), (i). The trial court granted summary
judgment in favor of BTC without stating the ground. Thus, Nash must defeat all grounds for
summary judgment in order to obtain a reversal on appeal.

 A defendant who moves for summary judgment under Rule 166a(c) must prove that
it is entitled to judgment as a matter of law either by conclusively disproving at least one element
of the plaintiff's claim or by proving each element of its own affirmative defense, thereby
establishing that no genuine issues of material fact remain. M.D. Anderson Hosp. & Tumor Inst. v.
Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). The defendant must support its motion with
proper summary judgment evidence. Tex. R. Civ. P. 166a(c). Only if the defendant meets its burden
does the burden shift to the plaintiff, as the nonmovant, to establish the existence of a genuine issue
of material fact. Id. 

 The initial burden for a defendant who moves for summary judgment under Rule
166a(i) is different. The defendant is merely required to assert that no evidence supports at least one
element of the plaintiff's claim and specify the challenged element. Johnson v. Brewer & Pritchard,
P.C., 73 S.W.3d 193, 207 (Tex. 2002). The nonmoving plaintiff then carries the burden of proof to
establish a genuine issue of material fact on at least one essential element of its claim. Id. We
construe the evidence in the light most favorable to the nonmovant. Id. at 208. The substantive law
governing the plaintiff's claim will determine what is considered an "essential element." Nash's
claim is governed by employment discrimination law.


The McDonnell Douglas Burden-Shifting Analysis

 At the time Nash filed his claim, the governing statute was the Texas Commission
on Human Rights Act ("TCHRA"). Tex. Lab. Code Ann. §§ 21.051-.556 (West 1996). Our reading
of the TCHRA is guided by analogous federal law. Quantum Chem. Corp. v. Toennies, 47 S.W.3d
473, 476 (Tex. 2001). For decades, Texas courts have followed the burden-shifting framework
established by the Supreme Court for analyzing employment discrimination cases. See McDonnell
Douglas Corp. v. Green, 411 U.S. 792 (1973). The McDonnell Douglas analysis involves three
steps. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

 At step one, the plaintiff must prove a prima facie case of discrimination. Id. The
required elements vary depending on the plaintiff's specific allegations. Quantum Chem. Corp., 47
S.W.3d at 477. If the plaintiff claims that an adverse employment decision was taken against him
based on race, as here, then he must establish that: "(1) he was a member of a protected class, (2) he
suffered an adverse employment action, and (3) nonprotected class employees were not treated
similarly." Farrington v. Sysco Food Servs., Inc., 865 S.W.2d 247, 251 (Tex. App.--Houston [1st
Dist.] 1993, writ denied). (2) The plaintiff's prima facie burden is not onerous. Burdine, 450 U.S. at
253. If the plaintiff satisfies this burden, it creates a rebuttable presumption that discrimination
occurred. United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983).

 At step two the burden shifts to the defendant to articulate a legitimate,
nondiscriminatory reason for its employment decision. Burdine, 450 U.S. at 253. The defendant's
burden is merely one of production, not persuasion. Board of Trustees v. Sweeney, 439 U.S. 24, 25
(1978). If the defendant carried its burden at step two, the presumption of discrimination is
eliminated and the burden shifts back to the plaintiff to overcome the defendant's proffered reason. 
Quantum Chem. Corp., 47 S.W.3d at 477.

 The law is currently in flux about what the plaintiff must prove to prevail at step
three. Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004) (discussing unsettled state
of current law). For many years, Supreme Court precedent specified that there were two ways to
analyze employment discrimination cases: If the plaintiff only had circumstantial evidence of
discrimination then McDonnell Douglas's three-step test governed, but if the plaintiff had direct
evidence of discrimination, then the test set forth in Price Waterhouse v. Hopkins was controlling. 
Price Waterhouse, 490 U.S. 228, 244-45 (1989); McDonnell Douglas Corp., 411 U.S. at 802-05;
see also Quantum Chem. Corp., 47 S.W.3d at 476 (how case is analyzed depends entirely upon
presence or absence of direct evidence). Under McDonnell Douglas, the plaintiff's ultimate burden
is to prove that the defendant's articulated reason is not the true reason for its employment decision,
but instead is mere "pretext" for a discriminatory reason. 411 U.S. at 804. The Price Waterhouse
"mixed motive" analysis only requires that the plaintiff prove that "discrimination was a motivating
factor in the employment decision, even if the employer's decision would have been identical in the
absence of discrimination." Quantum Chem. Corp., 47 S.W.3d at 478.

 Recent opinions from the United States Supreme Court and the Texas Supreme Court
have caused the line between "pretext" and "motivating factor" cases to be blurred. The Texas
Supreme Court in 2001 held that the plain language of the TCHRA (3) mandates that "'a motivating
factor' is the correct standard of causation for the plaintiff in all TCHRA unlawful employment
claims," whether the claim is based on direct or circumstantial evidence. Id. at 480; see also City
of Austin Police Dep't v. Brown, 96 S.W.3d 588, 600 (Tex. App.--Austin 2002, pet. dism'd)
(discussing Quantum Chemical's holding). The Quantum Chemical court did not eliminate the
pretext requirement. Rather, it held that plaintiffs can prove discrimination was a "motivating
factor" for the employment decision by showing that the employer's articulated reason was mere
pretext. 47 S.W.3d at 481-82. In 2003, the Texas Supreme Court again stated that "motivating
factor" is the proper standard of causation, even in a "pretext" case. Wal-Mart Stores, Inc. v.
Canchola, 121 S.W.3d 735, 739-40 (Tex. 2003). It is not sufficient for a plaintiff to prove the
employer's articulated reasons are pretext for some other reason; the plaintiff must show the other
reason to be one motivated by discrimination against the plaintiff's protected class. Id. at 740 ("The
relevant inquiry is not whether the [articulated reasons] were pretext, but what they were a pretext
for."). Thus, after Quantum Chemical and Canchola, Nash's burden of showing that BTC was
motivated by discrimination can be satisfied with proof that BTC's articulated reasons are mere
pretext.

 Most recently, the United States Supreme Court held that the "mixed motive" analysis
is proper in cases based wholly on circumstantial evidence as well as those based on direct evidence. 
Desert Palace, Inc. v. Costa, 539 U.S. 90, 92 (2003). Courts have differed as to whether the
McDonnell Douglas analysis has survived Desert Palace. Compare Sanders v. City of Montgomery,
319 F. Supp. 2d 1296, 1314 (M.D. Ala. 2004), with Dunbar v. Pepsi-Cola Gen. Bottlers of Iowa,
Inc., 285 F. Supp. 2d 1180, 1196 (N.D. Iowa 2003). We need not decide which interpretation of
Desert Palace is correct for purposes of this case because Nash failed to produce sufficient evidence
to prevail under either construction. See Roberson, 373 F.3d at 652 (holding that McDonnell
Douglas did not affect outcome of appeal because appellant failed to create "a fact issue as to
whether Alltel's adverse employment decision was, even in part, motivated by discriminatory
animus."). 


BTC's Summary Judgment Motion


 Nash makes an initial challenge to the summary judgment by claiming that the trial
court improperly held him to a higher standard of proof than was required. Nash asserts that he was
held to a "preponderance" rather than a "scintilla" standard. We agree that a nonmovant satisfies
his summary judgment burden by producing more than a scintilla of evidence to create a genuine
issue of material fact on at least one essential element of his claim. King Ranch, Inc. v. Chapman,
118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 124 S. Ct. 2097 (2004). Nash's claim fails, however,
because nothing in the record indicates that the trial court applied the wrong standard and, in any
event, Nash failed to produce even a scintilla of evidence to raise a genuine issue of material fact.

 Under the burden-shifting framework, it is undisputed that Nash established his prima
facie case at step one and that BTC satisfied its burden at step two by articulating three violations
of company policy as legitimate, nondiscriminatory reasons for Nash's termination. The only
essential element about which Nash could raise a genuine issue of material fact, then, is whether
BTC's articulated reasons were legitimate, or were instead mere pretext for a true, discriminatory
motivation. 

 "To establish a fact question on the issue of pretext, the nonmovant must present
evidence indicating that the nondiscriminatory reason given by the employer is false or not credible,
and that the real reason for the employment action was unlawful discrimination." Elgaghil v.
Tarrant County Junior Coll., 45 S.W.3d 133, 140 (Tex. App.--Fort Worth 2000, pet. denied)
(emphasis added). In an attempt to satisfy this burden, Nash argues that BTC's articulated reasons
varied over time, that BTC's investigation was flawed and produced no evidence of a legitimate
reason to terminate Nash, and that BTC's racial discrimination is evidenced by the comment of John
Gabbert, a subordinate employee. None of these allegations create a genuine issue of material fact
about whether BTC's articulated reasons were legitimate or pretextual, and Nash has failed to adduce
any affirmative proof of racial discrimination by BTC. 


 Consistency of BTC's Articulated Reasons

 Nash claims that a genuine issue of material fact remains at step three based on a
statement given by Ballinger in June 2001 to a Texas Workforce Commission (TWC) Operator (4)
regarding why Nash was terminated. Ballinger told the operator that the "real reason" Nash was
fired was for sexual harassment. According to Nash, Ballinger's statement implies that his
termination was based on a single policy violation and is therefore inconsistent with the decision that
Nash was terminated for violating three policies. Nash's claim is without merit.

 Although Ballinger did refer to sexual harassment as the "real reason," she also
explained the two other policy violations to the operator. Ballinger testified that there were always
three reasons leading to Nash's termination and that her statement about the "real reason" was given
in response to the operator's request for a "primary" reason, not that Nash's sexually harassing
conduct was the "sole" reason for his termination. Ballinger's testimony is supported by Nash's own
statement to the TWC on May 21, 2001, the day he was fired. Nash listed all three violations of
policy as the reasons Ballinger expressed to him for BTC's decision. The record evidences that BTC
has consistently articulated Nash's three policy violations as its legitimate, nondiscriminatory
grounds for Nash's termination, and Nash failed to produce a scintilla of evidence to raise a genuine
issue of material fact about whether BTC's reasons were mere pretext for a discriminatory motive.


 BTC's Investigation

 Nash also attempts to create a genuine issue of material fact about the legitimacy of
BTC's articulated reasons by claiming that Ballinger's investigation reached inaccurate conclusions
on each of the three allegations against him. First, Nash challenges the finding that he violated
BTC's sexual harassment policy. He claims Ballinger did not interview the proper witnesses and
that the allegation was fabricated by Benites in retaliation against Nash for Nash's report of 
Benites's suspected drug use. Nash asserts that Ballinger should have interviewed Aurelia Cruz,
another co-worker whom Nash claims was present at the time he allegedly made the inappropriate
comment about the housekeeper. Nothing in the record shows that Nash informed Ballinger about
Cruz or asked Ballinger to interview her, and Nash did not offer an affidavit by Cruz at the summary
judgment hearing.

 Nash also fails to satisfy his burden by pointing to Benites's motivations. Nash did
not produce evidence that any possible animosity felt by Benites against Nash was based on race. 
Even if Benites had improper motives for making the allegation against Nash, that does not provide
any evidence of racial discrimination by BTC. Nash does not allege that Benites exerted influence
over Ballinger or Hall, the primary decisionmakers, to cause Nash's termination. See Roberson, 373
F.3d at 653. Finally, two other employees corroborated Benites's report that Nash made sexual
comments about the housekeeper and requested that she be brought to his office. These facts
evidence a legitimate reason for Nash's termination based on his misconduct, not his race.

 Nash also challenges the finding that he violated company policy by initiating
discussion with subordinates about Benites's possible drug use. He claims that the witnesses who
reported this violation to Ballinger were lying. "[An employee's] subjective belief that he was
terminated based on race . . . is insufficient to create a fact issue about whether [an employer's]
legitimate nondiscriminatory reason for terminating [him] was pretextual." M.D. Anderson Hosp.
& Tumor Inst., 28 S.W.3d at 25. Moreover, "an employee's subjective belief that an employer gave
a false reason for its employment decision is not competent summary judgment evidence." Elgaghil 
45 S.W.3d at 141. Ballinger had sufficient reports from which to conclude that Nash violated BTC's
confidentiality policy. Nash provided Ballinger with the names of four subordinate employees whom
he claimed approached him, a manager, with reports that Benites was using drugs. Ballinger
interviewed each of these four, plus one additional employee from Benites's department. All five
told Ballinger that they did not have any personal knowledge of Benites using drugs or alcohol at
work and that they had not made such a report. Two told Ballinger that Nash approached them to
discuss his suspicions about Benites. Nash did not produce any evidence to support his claim that
these five witnesses lied to Ballinger. Nash's subjective belief is not sufficient to overcome the
evidence produced by BTC. 

 Regarding the third allegation, Nash does not deny that he conducted an unauthorized
background check on Benites; he only asserts that such conduct did not constitute a violation of
BTC's policy. His claim does not provide a scintilla of evidence to overcome BTC's legitimate
reasons for Nash's termination.

 In sum, Nash's challenge to Ballinger's investigation fails to satisfy his burden
because he does not claim that the investigation was inadequate, but only that its results were
incorrect. "[I]t is not sufficient for [the employee] to present evidence that the [employer's]
investigation was imperfect. . . ." Canchola, 121 S.W.3d at 740. Nash was an at-will employee
whom BTC was entitled to fire for any reason, as long as it was not illegal. See id. Any one of the
three policy violations provides BTC with a legitimate basis for firing Nash. The evidence in the
record supports both the conclusions reached by Ballinger's investigation--that Nash violated three
company policies--and BTC's articulation that Nash was terminated based on this misconduct. 
There is no evidence to support Nash's subjective belief that his termination was based on his race. 


 Stray Remarks and the Lack of Affirmative Proof of Discrimination

 Nash also sought to overcome BTC's articulated reasons and adduce affirmative
evidence of discrimination by pointing to a racial comment made in the workplace by John Gabbert,
a subordinate employee. Nash provides the affidavit of Paul Aleman, a former BTC employee, to
support his claim. Even if Gabbert made the allegedly discriminatory statement, it does not create
a fact issue about whether BTC's decision was motivated by discrimination. Workplace comments
do not provide sufficient evidence of a discriminatory animus on behalf of the employer unless they
are "(1) related to plaintiff's protected class, (2) proximate in time to the adverse employment
decision, (3) made by an individual with authority over the employment decision at issue, and (4)
related to the employment decision at issue." Elgaghil, 45 S.W.3d at 140 (citing Krystek v.
University of S. Miss., 164 F.3d 251, 256 (5th Cir. 1999)). Otherwise, such comments are merely
stray remarks that, standing alone, provide no evidence of discrimination. Id.

 It is undisputed that Gabbert was not a decisionmaker; Nash was Gabbert's manager. 
Nash never reported Gabbert's alleged comment to any decisionmaker and there is no evidence that
the decisionmakers otherwise knew about his comment. Nor is there any evidence to suggest that
Gabbert had any influence with or over the decisionmakers. Aleman's affidavit states that this
comment was made in "late 2000," approximately five months prior to Nash's termination. Because
the pivotal events in Nash's termination did not begin until a month before the decision was made,
Gabbert's comment was not proximate in time to the employment decision. Stray remarks, remote
in time from Nash's termination, and not made by anyone directly connected with the decision, are
not enough to raise a fact question about whether BTC's reasons for terminating Nash were
pretextual. See M.D. Anderson Hosp. & Tumor Inst., 28 S.W.3d at 25.

 Nash's own testimony also demonstrates his lack of affirmative proof. Nash testified
that he did not believe that Ballinger or Hall, the two decisionmakers, were racist. He could not
identify any instance where either Ballinger or Hall had been unfair towards an African-American
or other minority. Nash acknowledged that he and Hall had a good working relationship. Nash also
conceded that, prior to this lawsuit, he never complained to any supervisor or government agency
about racial discrimination at BTC.

 The record shows that Nash's claim that he was terminated because of his race is
based on nothing more than his subjective beliefs. At most, it amounts to "mere surmise or
suspicion" and does not constitute a scintilla of evidence sufficient to create a fact issue. See Gold
v. Exxon Corp., 960 S.W.2d 378, 384 (Tex. App.--Houston [14th Dist.] 1998, no pet.). Nash cannot
meet his burden simply by denying the allegations against him and making conclusory statements
that he was discriminated against because "some suspicion linked to another suspicion produces only
more suspicion, which is not the same as some evidence." King Ranch, Inc., 118 S.W.3d at 755. 
Nash's first issue is overruled.


Same Actor Inference

 Nash next argues that the trial court erred in giving a "weighty" preference to BTC
regarding the "same actor" inference. It is undisputed that the same actor inference applies in this
case because Ballinger and Hall made both the decisions to hire and to fire Nash. When a plaintiff
is both hired and fired by the same decisionmaker, an inference arises that the adverse employment
decision is not motivated by discrimination, because it would be illogical to hire someone possessing
a characteristic the employer disliked, "only to fire them once they are on the job" based on that same
characteristic. Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996). The inference in favor
of the defendant is "even more weighty" when the decisionmaker is also a member of the same
protected class as the plaintiff. Ralkin v. New York City Transit Auth., 62 F. Supp. 2d. 989, 1000
(E.D.N.Y. 1999). Neither Ballinger nor Hall belong to Nash's protected class. Nothing in the
record, however, suggests that the trial court gave the inference any undue weight. The summary
judgment was granted based on Nash's failure to meet his burden of proof by creating a genuine
issue of material fact at step three, not because the trial court relied on the same actor inference. 
Nash's second issue is overruled.


Evidentiary Rulings


 In his third issue, Nash asserts that the trial court erred by admitting portions of
Ballinger's affidavit and by excluding the notes made by the TWC Operator. At the summary
judgment hearing, Nash objected to the admission of two parts of Ballinger's affidavit. He first
objected to her statement that "[t]o my knowledge, Benites did not know about Nash's complaint
before he made his complaint about the housekeeper incident," on the grounds that she could not
have personal knowledge about what Benites knew and that the affidavit was contradictory to her
other testimony. He also objected to the portion of Ballinger's affidavit where she explained the
three violations of company policy that provided BTC's basis for his termination. Nash claims this
statement contained legal conclusions and was contradictory to her other testimony. The trial court
overruled both objections and admitted the affidavit in full.

 The trial court did not err in overruling Nash's first objection because Ballinger's
statement was based on personal knowledge and there was no evidence contradicting it. Ballinger's
affidavit sets forth the beliefs she formed through her investigation. The decisionmaker's personal
thought process is relevant in an employment discrimination case. Ballinger's statement is not
inconsistent with her testimony that she knew Nash had previously reported his suspicions about
Benites to Pate, Benites's manager. No evidence suggests that Pate revealed to Benites that Nash
had made such a report. Even if Benites was aware of Nash's allegations, this does not provide any
evidence of racial discrimination on behalf of BTC. There is also no evidence to show that Benites
exerted any influence over Ballinger or Hall and, without more, the potential biases of a subordinate
employee cannot be imputed to the decisionmakers. See Roberson, 373 F.3d at 653.

 The trial court also did not err in overruling Nash's second objection to Ballinger's
affidavit because it was without merit. The employer has the burden of proof in a discrimination
case to articulate legitimate, nondiscriminatory reasons behind its employment decision. See
McDonnell Douglas Corp., 411 U.S. at 803. Ballinger, as the decisionmaker, was not only
permitted, but required, to testify about the reasons for Nash's termination in order to satisfy BTC's
burden at step two. BTC consistently articulated Nash's three violations of company policy as its
legitimate reasons for his termination. Our conclusion that Nash failed to create a genuine issue of
material fact regarding BTC's true motivations is therefore not affected by the trial court's admission
of Ballinger's affidavit. 

 Finally, Nash claims that the trial court erred by excluding the TWC Operator's notes. 
When Nash offered the notes, BTC objected that they were inadmissible according to section
213.007 of the Texas Labor Code and that they were hearsay not falling within any exception. See
Tex. Lab. Code Ann. § 213.007; Tex. R. Evid. 801-06. The trial court sustained BTC's objection
and excluded the notes. Without reaching BTC's specific objections, we find that even if the court
should have admitted the notes, it was not harmful error to exclude them because nothing in the
notes supports Nash's attempt to raise a genuine issue of material fact. The notes confirm BTC's
evidence of the three legitimate, nondiscriminatory reasons for Nash's termination. Nash's third
issue is overruled.


CONCLUSION



 Nash failed to adduce a scintilla of evidence to raise a genuine issue of material fact
about the essential element of whether BTC's articulated reasons for his termination were legitimate
or were mere pretext for a true discriminatory animus. Nash also produced no affirmative evidence
of racially discriminatory practices or conduct attributable to BTC or its decisionmakers. Because
BTC satisfied its burden at step two and Nash was unable to overcome BTC's evidence at step three, 
we overrule his issues on appeal and affirm the judgment in favor of BTC.



 

 Jan P. Patterson, JusticeBefore Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: December 16, 2004

1. Nash initially claimed that a "police officer friend"conducted the background check for
him, but later acknowledged that he ran the search on his personal computer at home.
2. Both Nash and BTC recited in their briefs that the third element of the plaintiff's prima
facie burden is whether the plaintiff was replaced by someone outside of the protected class. In a
race discrimination case, this "may help raise an inference of discrimination, [but] it is neither a
sufficient nor necessary condition." Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir.
1996). If the discrimination is based on age, however, most courts require proof that the plaintiff
was replaced by a nonprotected class member. See, e.g., Reeves v. Sanderson Plumbing Co., 530
U.S. 133, 142 (2000); Russo v. Smith Int'l, 93 S.W.3d 428, 435 (Tex. App.--Houston [14th Dist.]
2002, pet. denied); Jaso v. Travis County Juvenile Bd., 6 S.W.3d 324, 328 (Tex. App.--Austin 1999,
no pet.).
3. "Except as otherwise provided by this chapter, an unlawful employment practice is
established when the complainant demonstrates that race, color, sex, national origin, religion, age,
or disability was a motivating factor for an employment practice, even if other factors also motivated
the practice. . ." Tex. Lab. Code Ann. § 21.125(a) (West 1996) (emphasis added).
4. The TWC conducted an "appeal tribunal hearing" over the telephone as an administrative
fact-finding process in a claim Nash filed seeking unemployment compensation.